## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**MICHAEL DOPORTO,**

        **Plaintiff,**

**vs.**                                    **Civ. No.  10-145 JH/KBM**

**CHAN KIM, Chief of Police of the Lovington,**
**New Mexico Police Department, Sgt. JOSHUA**
**BAKER, and Patrolman PETER HONIGMANN,**
**individually and in their official capacities,**

        **Defendants.**

## MEMORANDUM OPINION AND ORDER

This case is before the Court on three motions: the Defendants' motion to dismiss or in the alternative for summary judgment [Doc. No. 47], Plaintiff's motion for an extension of time to file his response to that motion [Doc. No. 51], and the Defendants' motion to strike Plaintiff's response to their motion on the grounds that it is untimely. [Doc. No. 54].  As an initial matter, the Court will grant Plaintiff the extension of time he seeks, deny the Defendants' motion to strike, and consider Plaintiff's response brief.  After having done so, the Court concludes that Defendants' motion should be granted in part and denied in part.  Their motion for summary judgment on Plaintiff's excessive force claim will be denied.  However, Defendants' motion to dismiss Doporto's supervisory liability claim against Defendant Chan Kim and his § 1983 conspiracy claim against all Defendants will be granted.

## LEGAL STANDARD

In evaluating a motion to dismiss for failure to state a claim, this Court must  "accept as true all well-pleaded facts, as distinguished from conclusory allegations, and view the facts in the light

most favorable to the nonmoving party" to determine whether the complaint sets forth plausible grounds to believe the claims asserted will find evidentiary support. *Archuleta v. Wagner*, 523 F.3d 1278, 1282–83 (10th Cir. 2008) (quotation and alteration omitted).  *See also Weise v. Casper*, 593 F.3d 1163, 1166 (10th Cir. 2010) ("Well-pleaded factual allegations are taken as true, but a court must also consider whether they plausibly give rise to an entitlement to relief.") (internal quotation marks omitted).  The same is true for a motion to dismiss on grounds of qualified immunity. *Archuleta*, 523 F.3d at 1282–83.  However, the Court must conduct this review in light of the unique nature of qualified immunity, which imposes a "heavy two-part burden" on a plaintiff: "First, the plaintiff must demonstrate that the defendant's actions violated a constitutional or statutory right. Second, the plaintiff must show that the constitutional or statutory rights the defendant allegedly violated were clearly established at the time of the conduct at issue."  *Id.* at 1283 (quotation omitted).  *See Cortez v. McCauley*, 478 F.3d 1108, 1114 (10th Cir. 2007) (once a defendant pleads qualified immunity, the plaintiff must meet his two-part burden).

"Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  When the defendant asserts "the qualified immunity defense, the burden shifts to the plaintiff, who must meet a strict two-part test by showing (1) that the defendant violated a constitutional or statutory right, and (2) that this right was clearly established at the time of the defendant's conduct." *Cassady v. Goering*, 567 F.3d 628, 634 (10th Cir. 2009) (quotations omitted).  A plaintiff's failure to meet either requirement requires the court to grant summary judgment in favor of the defendant. *See Swanson v. Town of Mountain View*, 577 F.3d 1196, 1199 (10th Cir. 2009).  The court must construe the facts in the light most favorable to the plaintiff as the nonmoving party to determine whether he has met his burden of establishing a clearly established constitutional violation. *Scott*

2

*v. Harris*, 550 U.S. 372, 378, 380, 127 S. Ct. 1769 (2007).  Even so, "because at summary judgment we are beyond the pleading phase of the litigation, a plaintiff's version of the facts must find support in the record. . . ."  *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1312 (10th Cir. 2009).

## FACTUAL BACKGROUND

Defendants have framed their motion in part as one for summary judgment under Rule 56, and in part as a motion to dismiss under Rule 12(b)(6).

## I.    Facts Alleged In The Complaint

Plaintiff alleges the following facts in his First Amended Complaint.  On February 22, 2008, Plaintiff Michael Doporto ("Doporto") and his wife were traveling toward Lovington, New Mexico after visiting friends.  Doporto had been drinking, and therefore his wife was driving.  The couple had an argument, and Doporto got out of the car.  His wife drove home and called the Lovington police to request a welfare check on Doporto.  As a result, Defendants Peter Honigmann and Joshua Baker, members of the Lovington police department, made contact with Doporto.  A confrontation ensued, and ultimately the officers arrested Doporto and charged him with resisting arrest and criminal damage to property.  In the course of the arrest, Honigmann and Baker battered Doporto without provocation.  Doporto alleges that the Defendants then conspired to cover up their use of excessive force against him.  Doporto further alleges that Defendant Chan Kim, the Chief of Police, negligently hired and failed to properly train Honigmann and Baker.

Doporto enumerates several violations of his constitutional rights pursuant to 42 U.S.C. § 1983, including violations of his Fourth Amendment rights to be free from the use of excessive force and unreasonable seizure, his Eighth Amendment right to be free from cruel and unusual punishment, malicious prosecution, conspiracy to violate civil rights, and negligent hiring and training.  He also asserts state law causes of action for assault and battery.

3

II.     **Summary Judgment Facts**

The question of what facts are to be considered with respect to Defendants' motion for summary judgment is somewhat more complicated.  This depends, in large measure, on what evidence the Court may consider in ruling on the motion for summary judgment.  Defendants have come forward with evidence in support of their motion that includes an affidavit by Defendant Peter Honigmann, one of the officers on the scene the night Doporto was arrested.  The affidavit contains several paragraphs that set forth facts regarding events on the night in question, and Doporto does not challenge their admissibility.  However, the affidavit also attaches and purports to incorporate the recitation of events set forth in the police report.  *See* Honigmann Aff., Ex. A to Doc. No. 48, at ¶ 7.  Doporto objects to consideration of the police report, which was written by several different officers, as inadmissible hearsay that the Court may not consider under Rule 56.  Indeed, the report does appear to be hearsay, as it contain out-of-court statements offered for their truth. Defendants make no argument demonstrating that the report satisfies any of the exceptions to the hearsay rule.

Summary judgment is warranted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Parties may submit affidavits in support of summary judgment, despite the fact that affidavits are often inadmissible at trial as hearsay, on the theory that the evidence may ultimately be presented at trial in an admissible form. *Bryant v. Farmers Ins. Exch*., 432 F.3d 1114, 1122 (10th Cir. 2005).  Nonetheless, "the content or substance of the evidence must be admissible."  *Thomas v. Int'l Bus. Machs.*, 48 F.3d 478, 485 (10th Cir. 1995).  Thus, for example, at summary judgment courts should disregard inadmissible hearsay statements contained in

affidavits, as those statements could not be presented at trial in any form. *See Hardy v. S.F. Phosphates Ltd. Co.*, 185 F.3d 1076, 1082 n. 5 (10th Cir. 1999).  The requirement that the substance of the evidence must be admissible is not only explicit in Rule 56, which provides that "[s]upporting and opposing affidavits shall ... set forth such facts as would be admissible in evidence," Fed. R. Civ. P. 56(e), but also implicit in the court's role at the summary judgment stage.  To determine whether genuine issues of material fact make a jury trial necessary, a court necessarily may consider only the evidence that would be available to the jury.  *See Truck Ins. Exch. v. MagneTek, Inc.*, 360 F.3d 1206, 1216 (10th Cir. 2004) (affirming summary judgment, in light of the available evidence, because "[j]ury verdicts may not be based on speculation or inadmissible evidence or be contrary to uncontested admissible evidence").  With that in mind, the Court declines to consider the information contained in the hearsay police report.[1]  Instead, the Court considers only the other portions of Honigmann's affidavit (to which Doporto raised no objection), the Judgment and Sentence attached as Exhibit B to Honigmann's affidavit, as well as the affidavits filed by Doporto and his wife (Doc. Nos. 52 and 53).  The Court views this evidence–which lacks a great deal of specificity–in the light most favorable to Doporto, resolving all discrepancies in his favor.

On February 22, 2008, Defendant Peter Honigmann was employed as a police officer with the City of Lovington.  Honigmann Aff. at ¶ 1.  On that date, Candace Doporto, wife of Plaintiff

---

[1] Doporto also objects to the report on the grounds that Defendants have violated Local Rule 56.1(b), which provides that a party moving for summary judgment must set out a concise statement of all the material facts.  These facts must be numbered and must refer with particularity to the portions of the record on which the movant relies.  *Id.*  In simply making a vague reference to the events set out in the police report, instead of enumerating the facts in numbered paragraphs, Defendants have failed to satisfy this requirement.  It is not the duty of the plaintiff or the court to sift through the report in order to determine what facts the Defendants may have intended to incorporate into their motion.  Rather, it is for the Defendants to set forth the facts in numbered paragraphs with citations to admissible evidence.  For this additional reason, the Court declines to consider the police report.

Michael Doporto, contacted the Lovington Police Department to conduct a welfare check on her husband. Candace Doporto Aff. at ¶ 2. As a result, at about 10:40 p.m., Honigmann was called to assist Defendant Sergeant Joshua Baker regarding an intoxicated male at V Constructors, Inc. in Lovington. When Honigmann arrived, he noticed that a large glass window in the front of the building had been shattered. Honigmann Aff. at ¶ 3. Baker asked an intoxicated male, later identified as Doporto, what his name was and what was going on. *Id*. at ¶ 5. Baker also directed Doporto to take his hands out of his pockets and to put them out this his palms extended. *Id*.; Michael Doporto Aff. at ¶ 3. Doporto complied, and then was struck by a Taser without warning. Michael Doporto Aff. at ¶ 3. Doporto was found guilty by a jury of resisting, evading, or obstructing an officer. Honigmann Aff. at ¶ 8; Judgment and Sentence. He was acquitted of criminal damage to property. *Id*.

## DISCUSSION

### I.    MOTIONS FOR EXTENSION OF TIME AND TO STRIKE

On April 22, 2011, United States Magistrate Judge William P. Lynch held an initial scheduling conference in this case. [Doc. No. 44] At the conference, the parties agreed that the Court should not issue a scheduling order, but instead should set briefing deadlines for Defendants' planned motion to dismiss. Accordingly, on April 25, 2011, the court entered an Order requiring Defendants to file their motion no later than May 23, 2011, Plaintiff to file his response no later than June 9, 2011, and Defendants to file their reply no later than June 27, 2011. [Doc. No. 45] Defendants filed their dispositive motion [Doc. No. 47] on May 23, 2011, in accordance with the deadline set by Judge Lynch. However, Plaintiff did not respond on or before June 9, 2011. Accordingly, on June 15, 2011, Defendants filed a notice of completion of briefing. [Doc. No. 49]. Eight days later, on June 23, 2011, Plaintiff filed his response to Defendants' motion. [Doc. No. 50]

6

The following day, June 24, 2011, Plaintiff filed a motion for extension of time to file his response brief.  [Doc. No. 51]  Acknowledging that his response was tardy, Plaintiff explained the delay by stating that staff in his attorney's office had mistakenly calendared 30 days for him to file the response brief.   Noting that this inadvertent error caused a relatively minor delay to the litigation, and stating that the oversight had not caused prejudice to the Defendants, Doporto argued that the motion should be decided on its merits after consideration of his response brief.  Defendants did not respond to Doporto's motion for extension of time, though they clearly oppose it.  Instead, on June 24, 2011, Defendants filed a motion to strike Doporto's response brief as untimely. [Doc. No. 54]  As grounds for their motion, Defendants argue that Doporto's response brief was late, and that in no New Mexico court do the rules allow 30 days to file a response to a motion.  Defendants identify no prejudice they have suffered or will endure as a result Doporto's two-week delay in filing his response brief.  Doporto, in turn, did not respond to Defendants' motion to strike. Finally, Defendants oddly elected not to file a reply brief in support of their dispositive motion.

The foregoing history demonstrates both sloppiness by counsel in litigating the case as well as a casual disregard for the tenets of the Lawyer's Creed of Professionalism.  This Court set forth a specific briefing schedule for the Defendant's dispositive motion and set out that briefing schedule in a written order.  There was no need for Doporto's counsel's staff to calculate the date their client's response brief was due because the date was clearly set forth in the order.  On the other hand, Defendants have set forth no reason why the Court should not grant Doporto the extension he seeks, other than arguing that his response brief was late in the first instance.  The Lawyer's Creed of Professionalism, applicable to all New Mexico attorneys, states, "I will agree to reasonable requests for extensions of time or waivers of formalities when legitimate interests of my client will not be adversely affected."

7

Having determined that Defendants will suffer no prejudice as a result of granting the extension that Doporto seeks, the Court will not strike his response brief. Instead, the Court will grant Doporto's motion for extension of time and will consider his response to Defendants' dispositive motion. However, the Court cautions Doporto that in the future he must strictly adhere to all deadlines, whether imposed by the Federal Rules of Civil Procedure, the Local Rules, or Court order. In the future, the Court is unlikely to forgive missed deadlines by Doporto.

## II.   MOTION TO DISMISS OR FOR SUMMARY JUDGMENT

### A.   Effect of *Heck v. Humphrey* On Doporto's Excessive Force Claim

In *Heck v. Humphrey*, 512 U.S. 477 (1994), the plaintiff appealed his Indiana criminal conviction. While the appeal was pending, he filed a civil lawsuit under 42 U.S.C. § 1983, seeking damages on the claim that the defendants, acting under color of state law, had engaged in unlawful acts that had led to his arrest and conviction. The defendants argued that the statute of limitations barred his claims. The Supreme Court held that when a state prisoner seeks damages in a Section 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence. *Heck v. Humphrey*, 512 U.S. 477, 487 (1994). If it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. *Id*.

Defendants argue that, pursuant to *Heck*, the Court should enter summary judgment on Doporto's excessive force claim because success on that claim would necessarily imply the invalidity of his conviction for evading, resisting or obstructing an officer.[2] The Court disagrees. In *Martinez v. City of Albuquerque*, 184 F.3d 1123 (10th Cir. 1999), an arrestee brought a § 1983

---

[2] Defendants do not argue that any of Doporto's other § 1983 claims are barred by *Heck v. Humphrey*, and therefore the Court does not address that question here.

excessive force claim against police officers who arrested him.  The Tenth Circuit held that *Heck* did not bar the plaintiff's claim because it did not conflict with the plaintiff's criminal conviction for resisting arrest.  *Id.* at 1126.  The court stated that "whether Martinez resisted arrest by initially fleeing the scene is a question separate and distinct from whether the police officers exercised excessive or unreasonable force in effectuating his arrest."  *Id*.  The court further explained, "[t]he state court's finding that Martinez resisted a lawful arrest . . . may coexist with a finding that the police officers used excessive force to subdue him.  In other words, a jury could find that the police officers effectuated a lawful arrest of Martinez in an unlawful manner."  *Id*. at 1127.  The same logic applies here.  A jury presumably concluded that Doporto did not comply with the officers' orders when they attempted to place him under arrest.  That fact, however, does not bear on the question of whether the officers used excessive force against Doporto in effectuating his arrest.  Accordingly, this portion of the motion will be denied.

      **B.**    **Qualified Immunity**

Qualified immunity shields "government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 815 (2009) (quotation omitted).  "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."  *Id*.  As this Court has previously stated, when the defendant asserts "the qualified immunity defense, the burden shifts to the plaintiff, who must meet a strict two-part test by showing (1) that the defendant violated a constitutional or statutory right, and (2) that this right was clearly established at the time of the defendant's conduct."  *Cassady v. Goering*, 567 F.3d 628, 634 (10th Cir. 2009) (quotations omitted).

The Court must evaluate the Defendants' use of force under a standard of objective reasonableness. *Graham v. Connor*, 490 U.S. 386 (1989). This includes consideration of three factors: (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight. *Id*. at 396. Further, the "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. *Id*. Here, the summary judgment facts drawn from admissible evidence are that the officers were called to the scene to perform a welfare check on an intoxicated man, and when they arrived on the scene they found a broken window on a building. Thus, they suspected that Doporto had committed the crime of criminal damage to property—a relatively minor crime. Next, there is no admissible evidence in the record that Doporto posed an immediate threat to the officers or others. Rather, the admissible evidence is that Doporto had complied with the officers' order to place his hands in the air when they tased him. Finally, for the same reasons, there is no admissible evidence that Doporto was actively resisting arrest or fleeing from the scene at the time the officers used force against him. In light of the foregoing, the Court concludes that the officers' actions in using the taser against Doporto was not objectively reasonable under the circumstances. Thus, a reasonable jury could conclude that Defendants Baker and Honigmann violated Doporto's Fourth Amendment right against the use of excessive force.

Having determined that a reasonable jury could conclude that Defendants Baker and Honigmann violated Doporto's Fourth Amendment rights, the Court next must determine whether their conduct violated clearly established law. As the Supreme Court recently explained:

> A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right.

> We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate.

*Ashcroft v. al-Kidd*, ––– U.S. ––––, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011) (internal citations and quotations omitted).  Ordinarily, for a rule to be clearly established "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains."  *Medina v. City & County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992), *overruled on other grounds, County of Sacramento v. Lewis*, 523 U.S. 833, 836 (1998).  However, because excessive force jurisprudence requires a determination under the totality of the circumstances with "careful attention to the facts and circumstances of each particular case," *Graham*, 490 U.S. at 396, 109 S.Ct. 1865, "there will almost never be a previously published opinion involving exactly the same circumstances.  We cannot find qualified immunity wherever we have a new fact pattern."  *Casey v. City of Federal Heights*, 509 F.3d 1278, 1284 (10th Cir. 2007).  As a result, the Tenth Circuit has adopted a sliding scale to determine when law is clearly established. "The more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation." *Pierce v. Gilchrist*, 359 F.3d 1279, 1298 (10th Cir. 2004).

Thus, when an officer's violation of the Fourth Amendment is particularly clear from *Graham* itself, the Tenth Circuit does not require a second decision with greater specificity to clearly establish the law.  That is the case here.  The limited admissible evidence presented on summary judgment is that Defendants Baker and Honigmann deployed their taser against a man who at that time was offering no resistance and posed no threat.  It cannot be disputed that on February 22, 2008, it was clearly established that use of a taser against a person suspected of a relatively minor crime, who posed no threat to officer or others, and who was following directives issued by police,

11

constitutes excessive force.  Accordingly, the Defendants' motion for summary judgment on the excessive force claims on the grounds of qualified immunity will be denied.

### C. Failure to State a Claim Against Defendant Kim For Negligent Hiring, Training, and Supervision

Defendants argue that Doporto's complaint fails to allege sufficient facts to state a claim against Defendant Chan Kim for negligent hiring, training, and supervision.  Thus, the Court treats the motion as one to dismiss for failure to state a claim under Rule 12(b)(6).  Doporto's only response to the motion is his naked assertion that the Court should allow further discovery before dismissing this claim.

Supervisory officials are not liable under § 1983 solely because their employees inflict injury on a plaintiff.  *See Duffield v. Jackson*, 545 F.3d 1234, 1239 (10th Cir. 2008).  To state a claim, Doporto must allege facts that show an "affirmative link [ ] between the constitutional deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise." *Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993).  As the Tenth Circuit explained, "§ 1983 allows a plaintiff to impose liability upon a defendant-supervisor who creates, promulgates, implements, or in some other way possesses responsibility for the continued operation of a policy the enforcement (by the defendant-supervisor or her subordinates) of which 'subjects, or causes to be subjected' that plaintiff 'to the deprivation of any rights . . . secured by the Constitution.'"  *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010) (quoting 42 U.S.C. § 1983).  Thus, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1948 (2009).

The allegations in Doporto's complaint fail to meet this standard.  The sole paragraph

12

directed to Defendant Kim contains the following conclusory allegation: "Defendant Kim negligently hired and then failed to properly train, manage and supervise Officers Honigmann and Baker."  Doc. No. 2 at ¶ 13.  This is insufficient to withstand challenge under Rule 12(b)(6).  Accordingly, Doporto's supervisory liability claim against Kim will be dismissed without prejudice for failure to state a claim.

### D.      Failure to State a Claim for Conspiracy

Defendants move to dismiss Doporto's conspiracy claim for failure to state a claim under Rule 12(b)(6).  Again, Doporto's only response to the motion is his naked assertion that the Court should allow further discovery before dismissing his claim.

In order to state a claim for conspiracy under § 1983, a plaintiff must allege specific facts showing agreement and concerted action among defendants.  "Conclusory allegations of conspiracy are insufficient to state a valid § 1983 claim."  *Durre v. Dempsey*, 869 F.2d 543, 545 (10th Cir. 1989).  Thus, a plaintiff fails to state a claim for conspiracy absent specific facts showing a "meeting of the minds" among the alleged co-conspirators.  *See Hunt v. Bennett*, 17 F.3d 1263, 1268 (10th Cir. 1994).

The only allegation in the amended complaint that supports Doporto's conspiracy claim is that "Defendants each of them attempted to and conspired to cover up the excessive use of force applied to Plaintiff by falsifying reports and maliciously filing false claims against the Plaintiff."  Doc. No. 2 at ¶ 12.  This conclusory allegation does not contain any specific facts showing a meeting of the minds or concerted action among the Defendants.  Therefore, it is insufficient to survive a motion to dismiss for failure to state a claim.  Defendants' motion will be granted, and the conspiracy claim will be dismissed without prejudice.

**IT IS THEREFORE ORDERED** that:

(1)     Plaintiff's motion for an extension of time to file his response brief [Doc. No. 51] is

**GRANTED**;

(2)     Defendants' motion to strike Plaintiff's response to their motion on the grounds that it is

untimely [Doc. No. 54] is **DENIED**;

(3)     Defendants' motion to dismiss or in the alternative for summary judgment [Doc. No. 47] is

**GRANTED IN PART and DENIED IN PART**; and

(4)     Plaintiff's supervisory liability claim against Defendant Kim and Plaintiff's conspiracy

claim against all Defendants are **DISMISSED WITHOUT PREJUDICE**.


**UNITED STATES DISTRICT JUDGE**