IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MICHAEL DOPORTO,

    Plaintiff,

v.                                                        CV 10-0145 JCH/WPL

CHAN KIM, et al.,

    Defendants.

**ORDER GRANTING MOTION FOR SANCTIONS**

This case is before me today on Plaintiff's counsel's failure to abide by court rules and basic etiquette—again. Defendants Peter Honigmann and Joshua Baker filed a Motion for Sanctions, Costs, and Attorneys Fees (Doc. 105) after Plaintiff's counsel, Alexander Ching, failed to appear for a deposition of Plaintiff Michael Doporto and Doporto's wife. Ching filed a response in opposition to the sanctions, claiming that a "medical emergency" prevented him from attending the deposition. (Doc. 109.) Having carefully considered the facts and relevant law, I find that Ching has not shown that his failure to mitigate the consequences of his absence at the deposition is substantially justified, and I grant Defendants' motion and award them reasonable costs and expenses associated with the cancelled deposition.

**FACTUAL AND PROCEDURAL BACKGROUND**

This case was filed in early 2010; as of October 2012 the parties are still in discovery. While I decline to relate the entire procedural history of this case, the fact that the case is still in the throes of discovery, more than two and a half years after filing, is indicative of the difficulties

the Court has encountered. Unsurprisingly, Defendants' recent attempt to obtain discovery was unsuccessful, resulting in more difficulty.

On July 27, 2012, Defendants properly noticed a deposition of Plaintiff Michael Doporto and his wife to take place on August 14, 2012, in Albuquerque, New Mexico. (Doc. 105 at 1.) On August 13, 2012, at 4:00 p.m., James Klipstine,[1] Ching's legal assistant, contacted defense counsel and told him that he was traveling to Albuquerque with Mr. and Mrs. Doporto, but that Ching would not be attending the depositions. (*Id*. at 1-2.) At that point defense counsel Lee Rogers, Chief of the Lovington Police Department Dan Bryant, and Defendant Honigmann had already left to travel to Albuquerque. (*Id*. at 3.) Klipstine informed defense counsel that Ching had a "medical emergency" and could not attend the deposition. (*Id*. at 1-2.) Apparently, Ching fell ill over the during the weekend of August 11 and 12, 2012, but this was the first time opposing counsel had learned of his illness. (Doc. 105 at 3; Doc. 109 at 1.)

Honigmann and Bryant, defense counsel, the court reporter, Mr. and Mrs. Doporto, and Klipstine all appeared for the deposition on the morning of August 14, 2012. (Doc. 105 at 2.) Defense counsel attempted to contact me for guidance that morning, but I was unavailable. (*Id*. at 5.) The parties discussed how to proceed, and defense counsel agreed that if Ching could appear by telephone, then the deposition could proceed. (*Id*.) Defendants state that Ching declined to attend by telephone (*id*. at 3; Doc. 105 Ex. A at 2; Doc. 105 Ex. B at 1; Doc. 105 Ex. C at 1); Ching states in his response that he agreed to make himself available by telephone "if any issue or need arose to be addressed" (Doc. 109 at 3). Klipstine's affidavit, attached to Ching's

---

[1] Klipstine was formerly plaintiff's counsel, but he withdrew from the case after being suspended from the practice of law in New Mexico. (Doc. 35; Doc. 26; Doc. 37.) His involvement early in the case resulted in a great number of the litigation delays (*see* Doc. 13; Doc. 35), so I do not entirely blame Ching for the delays in this case.

response brief, clarifies that Ching refused to remain on the line for multiple hours, but that Ching would be available if an issue arose. (Doc. 109 Ex. 1 at 3.)

Ching later produced a note to defense counsel from his doctor describing his illness and explaining why he could not be present for the deposition. (Doc. 105 at 4.) The note is dated August 14, 2012, is signed by Jason Bradley, M.D., and states that "it would be in the best interest of Mr. Ching if he does [not] go on any trips that would involve driving for long periods of time." (Doc. 105 Ex. E.)

On August 30, 2012, Defendants filed this motion for sanctions. Ching filed a belated response (Doc. 109), which I accepted (Doc. 116), and Defendants filed a reply (Doc. 119).

## LEGAL STANDARD

There are multiple methods for a district court to sanction attorneys and their clients for a variety of inappropriate conduct. *See* FED. R. CIV. P. 11, 26(g)(3), 37; *Chambers v. NASCO, Inc.*, 501 U.S. 32, 49 (1991). Federal Rule of Civil Procedure 37 governs sanctions for various discovery abuses, including the failure to attend a properly noticed deposition. FED. R. CIV. P. 37(d). Permissible sanctions include ordering the offending party or the attorney to pay the reasonable expenses, including attorney's fees, caused by the failure to attend the deposition. FED. R. CIV. P. 37(d)(3). Rule 37(d) is not an absolute rule, though, and the court may not issue sanctions when the individual's absence was "substantially justified or other circumstances make an award of expenses unjust." *Id.*

Rule 37(d)'s language is specific to the parties. It makes no mention of attorneys except to clarify that the court may order the attorney advising the party to pay all or part of the expenses and attorney's fees. *See* FED. R. CIV. P. 37(d)(3). This raises an inevitable question: How does the court sanction an *attorney* who has failed to attend a deposition? Several circuits

have strictly interpreted Rule 37 sanctions to exclude the sanctioning of attorneys when the applicable subsection's language is limited to the parties. *See Grider v. Keystone Health Plan Cent., Inc.*, 580 F.3d 119, 141 (3d Cir. 2009) (holding Rule 37(c) may not be used to sanction an attorney); *Maynard v. Nygren*, 332 F.3d 462, 470 (7th Cir. 2003) (same); *Apex Oil Co. v. Belcher Co. of N.Y.*, 855 F.2d 1009, 1014 (2d Cir. 1988) (same). While these circuits confine their discussion to the language of Rule 37(c), and not Rule 37(d), their focus on the phrase "the party" and the absence of the phrase "the attorney" is equally applicable to Rule 37(d). *See Grider*, 580 F.3d at 141; *Maynard*, 332 F.3d at 470; *Apex*, 855 F.2d at 1014. *Compare* FED. R. CIV. P. 37(c)(1) *with* FED. R. CIV. P. 37(d)(1)(A)(i).

The Tenth Circuit has not expressly addressed this issue, but it has upheld, and never questioned, the validity of the imposition of monetary sanctions on attorneys under Rule 37(b). *See Myers v. Colgate-Palmolive Co.*, 26 F. App'x 855, 862 (10th Cir. 2002) (unpublished); *Law v. NCAA,* 134 F.3d 1438, 1441 (10th Cir. 1998). Rule 37(b), like Rule 37(d), does not use the word "attorney" among those the court may sanction. *See* FED. R. CIV. P. 37(b)(2). Furthermore, the fact that Rule 37(d) considers apportioning the sanction to the attorney when he is responsible for a party's failure to attend a deposition reinforces the position that an attorney may be sanctioned under Rule 37. *See* FED. R. CIV. P. 37(d)(3). Thus, I believe that I may sanction an attorney under Rule 37(d), so long as it is limited to the imposition of a monetary sanction.

Rule 37 is not the only vehicle through which I may sanction an attorney. A court has the inherent authority to sanction bad-faith conduct in litigation. *Chambers*, 501 U.S. at 49; *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766-67 (1980); *Braley v. Campbell*, 832 F.2d 1504, 1510 (10th Cir. 1987) ("To deter frivolous and abusive litigation and promote justice and

judicial efficiency, the federal courts are empowered to impose monetary sanctions, by statutes and the rules of civil and appellate procedure as well as their inherent right to manage their own proceedings.") This authority is ever present, and a court may sanction bad faith conduct through its inherent authority even when that conduct could also be sanctioned by Federal Rules of Civil Procedure or a statute. *Chambers*, 501 U.S. at 50.

## DISCUSSION

Defendants request for sanctions is not solely premised on Ching's absence at the deposition; rather, they seek sanctions for the way he managed his "medical emergency." While Honigmann readily acknowledges that Ching did have medical problems that prevented him from attending the deposition, he argues that Ching's failure to inform defense counsel of his medical emergency prior to 4:00 p.m. on August 13, 2012, and his refusal to make himself available by phone during the deposition are sanctionable offenses. I agree, and I sanction Ching pursuant to Rule 37(d) and with my inherent powers for this conduct.

First, Ching does not deny that his medical emergency took place on August 11 to 12. Yet, he offers no explanation for why he waited until the eleventh hour to inform opposing counsel of his absence. Instead of explaining this delay, Ching claims that he "believed in good faith that no significant problem would arise" and that he "had advised [his] client and his wife to be truthful and respond fully to each question asked." (Doc. 109 at 3.) If I understand Ching correctly, he believes that leaving his client and his wife without representation at a deposition was acceptable because he told them to tell the truth. The facial absurdity of this statement as an excuse as to why counsel need not defend a deposition warrants no further discussion.

Ching sent Klipstine to Albuquerque in his stead, claiming to have "acted in good faith." (Doc. 109 at 3.) I find this likewise impossible to believe. Klipstine's involvement in this case as

5

a legal assistant has been the subject of some difficulty. While I, along with defense counsel, initially permitted Klipstine to act in a limited capacity in this case (*see* Doc. 69 (permitting Klipstine to represent Doporto at a status conference subject to the consent of defense counsel when Ching inexplicably failed to appear)), my leniency quickly waned.[2] Furthermore, it has become quite clear that Klipstine's involvement as a legal assistant more generally is not acceptable. At a hearing for Klipstine's petition for readmission to the federal bar on August 7, 2012, the three judge panel questioned his involvement in this case. *In re the Matter of James W. Klipstine, Jr. Esq.*, No. 11-mc-21 RB/WJ/SMV (Doc. 10 at 12) (D.N.M. Aug. 28, 2012). Apparently, Klipstine had not received permission from the Disciplinary Counsel to work for Ching in any capacity. (*Id*. at 13.) While the order denying Klipstine's petition to be readmitted was handed down after the cancelled deposition, the hearing took place a week beforehand. The fact that this case was specifically discussed and Klipstine's involvement heavily questioned should have been an immediate red flag that Klipstine should not be acting in any legal capacity in this matter.[3] Given my vocal disapproval of Klipstine's involvement and the skepticism of the panel, Ching could not have had a "good faith belief" that it was acceptable to rely on Klipstine to defend the deposition.

Not only did Ching fail to give timely notice of his absence, he inexplicably refused to appear at the deposition telephonically. (Doc. 105 Ex. A at 3 (affidavit of defense counsel

---

[2] During a status conference on April 13, 2012 (Doc. 75), I instructed Klipstine not to make legal arguments to the Court because he was not the attorney of record, explaining that only Ching may make arguments on behalf of his client. On another occasion, Klipstine faxed several proposed orders to my office, and my clerk had to contact him to explain that he could not file motions or send proposed orders to the Court. At the time of these incidents, I did not feel it was necessary to memorialize my various reprimands on the record. Looking back, I realize that this was an error.

[3] I acknowledge that the hearing for Klipstine was on an unrelated matter. Nevertheless, any competent attorney would pay close attention to disciplinary matters concerning his or her legal assistants, especially when the assistant has been suspended from practicing law. Accordingly, I assume that Ching knew or should have known what was said in that hearing.

Stephen French); Doc. 105 Ex. B at 1-2 (affidavit of Bryant); Doc. 105 Ex. C at 1-2 (affidavit of defense counsel Rogers); Doc. 105 Ex. F at 1-2 (affidavit of defense counsel Paula Forney).) Ching offers absolutely no explanation as to why he would not remain on the phone throughout the course of the deposition. I find this particularly frustrating, since his actions had already inconvenienced the litigants and opposing counsel. His refusal to mitigate the repercussions of his absence demonstrates that Ching has no regard for the time or finances of others. In fact, this appears to be a recurring theme in this case. Ching has treated procedure, deadlines, and even court orders as afterthoughts. Perhaps by granting Defendants' motion, Ching will awaken from his apparent slumber and proceed to litigate his case.

## CONCLUSION

While the phrase "medical emergency" appears to be a substantial justification for missing a deposition, here it is not. Ching failed to attend the deposition in-person because of his medical emergency; this is understandable. However, his untimely notice to Defendants and his refusal to appear telephonically undermines any excuse for his failure to appear. I order Ching to pay reasonable expenses and costs, including attorney's fees, to Defendants in the amount of **$8,429.17**. Ching must submit an affidavit to the Court attesting that he has paid these fees within **ninety days (90)** from the entry of this order.

IT IS SO ORDERED.

_____
William P. Lynch
United States Magistrate Judge

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any *pro se*
party as they are shown on the Court's docket.